SEND

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 07-4069-GW(AJWx) | Date | August 9, 2007 |
| Title | Louis Scaduto et al v. Rouhollah Esmailzadeh et al | | |

Present: The Honorable  GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Wil Wilcox | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

Christopher M. Brainard

Attorneys Present for Defendants:

David B. Shapiro
Lynda J. Kim

**PROCEEDINGS:**   **HEARING RE: DEFENDANTS' MOTION TO DISMISS COMPLAINT [FRCP 12(B)(6)] (filed 07/17/07); AND DEFENDANTS' MOTION TO STRIKE PURSUANT TO CCP § 425.16 (filed 07/17/07)**

Motion hearings are held. The Court adopts the tentative ruling as the final ruling (attached hereto). Defendants' Motion to Dismiss Complaint [FRCP 12(b)(6)] (Filed 07/17/07) is **granted in part and denied in part.** Defendants' motion is granted with leave to amend. Plaintiff shall file an amended complaint within 20 days of this order. Defendants' Motion to Strike Pursuant to CCP § 425.16 (filed 07/17/07) is **denied.**

Plaintiff shall submit a proposed order as to the preliminary injunction.

Parties hereby waive notice.

IT IS SO ORDERED.



DOCKETED ON CM
AUG 10 2007
BY ___ 004

: 17

Initials of Preparer   JG

**Scaduto, et al. v. Esmailzadeh, et al.**, Case Number CV 07-4069

Tentative Rulings:

    MOTION 1:   Special Motion to Strike (anti-SLAPP)

    MOTION 2:   Motion to Dismiss for Failure to State a Claim

## I. Background

Louis Scaduto and nineteen other individuals (collectively "Plaintiffs") sued Rouhollah Esmailzadeh and five other individual and entity defendants (collectively "Defendants") asserting eight claims: 1) violation of the Federal Fair Housing Act, 42 U.S.C. §§ 3601 et seq. ("FHA"); 2) violation of the California Fair Employment & Housing Act, Cal. Govt. Code §§ 12955 et seq. ("FEHA"); 3) violation of the California Unruh Civil Rights Act, Cal. Civ. Code §§ 51 et seq.; 4) unfair business practices, Cal. Bus. & Prof. Code § 17200; 5) negligence; 6) violation of the implied covenant of quiet enjoyment, Cal. Civ. Code § 1927; 7) violation of the Federal Civil Rights Act of 1866, 42 U.S.C. § 1982; and 8) violation of the California Bane Civil Rights Act, Cal. Civ. Code § 52.1.

Plaintiffs are tenants of an apartment complex known as the "Teriton," located on San Vicente Boulevard in Santa Monica, which allegedly constitutes a "dwelling" within the meaning of 42 U.S.C. § 3602(b). *See* Complaint ¶¶ 5, 13. Plaintiffs allege that the individual defendants are owners of defendant Or Khaim Hashalom ("Or Khaim"), which is alleged to be "an unincorporated association, entity, partnership, corporation, LLC, non-profit corporation, trust and/or amorphous syndicate with the specific mission of engaging in discriminatory housing operations." Complaint ¶ 7. Plaintiffs allege that Defendants are discriminating against them on the basis of race, national origin, religion and disability in connection with evictions Defendants plan to effectuate under California Government Code section 7060, et seq. ("Ellis Act" evictions). *See* Complaint ¶ 1; see also Friedman, Garcia, et al., California Practice Guide: Landlord –Tenant ("Friedman & Garcia") (2006) § 5:14, at 5-15.[1]

---

[1] "The Ellis Act .sets forth the procedure by which a landlord may go out of business by removing rental units from the market." *Drouet v Superior Court*, 31 Cal 4th 583, 589 (2003) Pursuant to the Ellis Act, no public entity shall by statute, ordinance, regulation, or other administrative action "compel the owner of any residential real property to offer, or to continue to offer, accommodations in the property for rent or lease. .."

Plaintiffs allege that Defendants "formed a plan in January of 2006 to tear down the existing buildings and structures at the Teriton for the specific purpose of building luxury condominiums which were to be sold at above market prices and in a discriminatory fashion only to wealthy Jewish people of Arabic decent [sic] from Iran and Iraq." Complaint ¶ 14.[2] Plaintiffs allege that this purpose was stated openly as the "religious mission" of Or Khaim and repeatedly stated thereafter by individual defendant Rosario Perry and others on behalf of Or Khaim. *See* Complaint ¶¶ 14, 22, 24. Plaintiffs accuse Or Khaim of a form of "shape-shifting" from a Religious Non-Profit Corporation to a Synagogue to a mutual benefit corporation, both "in pursuit of its 'religious mission' of providing luxury accommodations to wealthy Jewish immigrants from Iran and Iraq" and in an attempt to "avoid the fact that [Or Khaim] is owned only by the Esmailzadeh family and their attorney Rosario Perry, and as such is not a legitimate religious organization, non-profit, or Synagogue." *See* Complaint ¶¶ 14, 17, 19.

Plaintiffs allege that Defendants acquired legal title to the Teriton in March 2006, but that in April 2006 the City of Santa Monica's Landmarks Commission scuttled Defendants' plan to demolish the Teriton and build luxury condominiums when the Landmark Commission designated the property and buildings at the Teriton as a Historical Landmark. *See* Complaint ¶¶ 15-16. Plaintiffs claim that Defendants then appealed for an exemption from the Historical Landmark status under California Government Code section 37361(c)(2), but this appeal was denied on June 12, 2007. *See* Complaint ¶ 17. As a result of the denial of the Historical Landmark denial, Defendants allegedly seek to "proceed with and accomplish its 'religious mission' of discriminatory housing" by engaging in the Ellis Act evictions. *See* Complaint ¶ 20. Plaintiffs claim that Defendants have already begun to accomplish their goal because one apartment at the Teriton is "occupied by an individual chosen by [Defendants] in pursuit of its 'religious mission.'" Complaint ¶ 22.

---

Cal. Govt. Code § 7060. The Ellis Act does not permit a landlord to withdraw from the rental market fewer than all of the accommodations in a building *See* Cal. Govt Code § 7060 7(d), *Daro v Superior Court (Foy)*, 151 Cal App 4th 1079, 1092 n.4 (2007).

[2] The Complaint alleges that many of the Plaintiffs are Jewish. *See* Complaint ¶¶ 14, 23. The Teriton also houses people who are Caucasian, Asian, Black, Latin, and Catholic, in addition to tenants of other racial makeup and religious faiths *See* Complaint ¶ 25

Plaintiffs' first cause of action centers on the allegation that Defendants have engaged in discriminatory housing practices on the basis of familial status, race, national origin, religion and color. *See* Complaint ¶ 28. In particular, Plaintiffs allege that Defendants have violated the FHA, 42 U.S.C. §§ 3604(a)-(d), 3607(a) and 3617. *See id.* In their second cause of action, Plaintiffs allege that Defendants have violated FEHA, Calif. Govt. Code § 12955(a), (c), (d), (f), (m) and (p), through discrimination based upon race, color, national origin and religion. *See* Complaint ¶ 30. Plaintiffs' allegation of violation of the Unruh Civil Rights Act is based upon alleged race, national origin and religious discrimination. *See* Complaint ¶ 32. Plaintiffs' section 17200 claim is based upon Defendants' alleged discriminatory practices, harassment and abuse of process by filing the Ellis Act eviction notices, and seeks Defendants ill-gotten profits and injunctive relief. *See* Complaint ¶¶ 35-36. Plaintiffs' fifth and sixth causes of action are for negligence and breach of the implied covenant of quiet enjoyment because of the above-described events. *See* Complaint ¶¶ 37-40. Plaintiffs cause of action under the Civil Rights Act of 1866 is based on the violation of Plaintiffs' right to fair housing and the denial to them of the opportunity to rent, use or enjoy housing because of their race, color, national origin and/or religion. *See* Complaint ¶ 41. Finally, Plaintiffs claim Defendants have violated their right to fair housing under the Bane Civil Rights Act by coercing and intimidating them in the exercise of their rights to be free from discriminatory interference based on race and national origin. *See* Complaint ¶ 43.

Plaintiffs seek a declaration that Defendants' practices violate the various statutes cited, compensatory damages in the amount of $5,000,000 to each plaintiff, punitive damages, treble damages, attorneys' fees and costs. Plaintiffs also request that the Court enjoin defendants "from evicting Plaintiffs and otherwise continuing to discriminate on the basis of race, national origin, religion against the Plaintiffs or against any other person who is a tenant at the subject properties or any other properties owned or managed by Defendants in violation of" the cited federal and state laws.

Defendants move to strike the state-law causes of action pursuant to California's anti-SLAPP statute, Code of Civil Procedure § 425.16. Defendants also move to dismiss each of Plaintiffs' eight causes of action for failure to state a claim.

## II. Analysis

### Motion 1

In federal court, section 425.16 of the California Code of Civil Procedure applies to "state law claims which . . . are asserted pendent to federal question claims." *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 63 F.Supp.2d 1127, 1130 (N.D.Cal.1999); *see also United States v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 971-73 (9th Cir. 1999) (anti-SLAPP statute applicable to state law counterclaims asserted in federal diversity action), *cert. denied sub nom Lockheed Missiles & Space Co., Inc. v. United States*, 530 U.S. 1203 (2000). Even though the Ninth Circuit has held that the anti-SLAPP statute can be invoked, its application is procedurally limited. Specifically, if a defendant files an anti-SLAPP motion, the outcome of which depends upon facts which may be developed through discovery, the court should permit discovery so as not to conflict with Federal Rule of Civil Procedure 56. *See Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 845-46 (9th Cir.2001); *Rogers v Home Shopping Network, Inc.*, 57 F Supp.2d 973, 982 (C.D.Cal.1999). Similarly, if an anti-SLAPP motion to strike is based on the legal deficiencies of the complaint, a federal court "must decide the motion in a manner that complies with the standards set by Federal Rules 8 and 12." *Rogers*, 57 F.Supp.2d at 982 (C.D.Cal.1999). In other words, the court must read the complaint broadly, take all well-pleaded allegations as true, and dismiss with leave to amend. *See id.* "Standards that put a more onerous burden on the nonmoving party would conflict with Rules 8 and 12. Therefore, they cannot apply in federal court." *Id.* at 982-83.

Section 425.16 is designed to prevent "cause[s] of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech." CCP § 425.16(b)(1). In a motion to strike under CCP § 425.16, the court engages in a two-part analysis: (1) the court decides whether Plaintiffs have made a threshold showing that the challenged cause of action arises from a protected activity; and (2) if such a showing has been made, the burden then shifts to Defendant to demonstrate a probability of prevailing on the merits of his or her claims. *See Equilon Enters., LLC v. Consumer Cause, Inc.*, 29 Cal.4th 53, 67 (2002). The moving party bears the initial burden of establishing a prima facie showing that the opposing party's cause of action arises from the defendant's free speech or petition activity.

"A defendant meets [its burden under CCP § 425.16(b)(1)] by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)...." *City of Cotati v. Cashman*, 29 Cal.4th 69, 78 (2002) (quotation marks omitted). The statute is to be broadly applied and includes four categories of protected conduct:

    (1) Any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law (§425.16(e)(1));

    (2) Any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law (§425.16(e)(2));

    (3) Any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest (§425.16(e)(3)); or

    (4) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest (§425.16(e)(4)).

In the anti-SLAPP context, the critical point is whether the cause of action itself was based on an act in furtherance of the right of petition or free speech. *See City of Cotati*, 29 Cal.4th at 78. Thus, "[t]he anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability – and whether that activity constitutes protected speech or petitioning." *Navellier v. Sletten*, 29 Cal.4th 82, 92 (2002) (emphasis in original). Whether the anti-SLAPP statute applies is determined by the "principal thrust or gravamen" of plaintiff's claim. *See Martinez v. Metabolife Int'l, Inc*, 113 Cal.App.4th 181, 188 (2003); Weil & Brown, Calif. Prac. Guide: Civ. Proc. Before Trial ("Weil & Brown") (2007), § 7:235.21, at 7-98. A cause of action alleging both protected and unprotected activity will be subject to CCP § 425.16 unless the protected conduct is "merely incidental" to the unprotected conduct. *See Scott v. Metabolife Int'l, Inc.*, 115 Cal.App.4th 404, 414, 419 (2004); *Martinez*, 113 Cal.App.4th at 187-88 That a plaintiff's lawsuit was filed after a defendant's protected activity took place does not by itself establish that the lawsuit "arose from" that activity for purposes of the anti-SLAPP statute. *See Sonoma Foods, Inc. v. Sonoma Cheese Factory*,

*LLC*, 2007 U.S. Dist. LEXIS 56032, *12 (N.D. Cal. July 23, 2007); *Flores v Emerich & Fike*, 416 F.Supp.2d 885, 897 (E.D. Cal. 2006); *City of Cotati*, 29 Cal.4th at 76-77. Nor is it enough to show that the action was "triggered by" or filed in response to or in retaliation for a party's exercise of free speech rights. *See Sonoma Foods*, 2007 U.S. Dist. LEXIS 56032, at *12; *Flores*, 416 F.Supp.2d at 897; *Navellier*, 29 Cal.4th at 89; *see also* Weil & Brown § 7:236, at 7-99.

Here, the Court need not reach the second step of the section 425.16 analysis because Defendants cannot show that any of Plaintiffs' causes of action are based on Defendants' acts in furtherance of the rights of petition or free speech. Although Plaintiffs allege the content of certain statements Defendants made that would be at least potentially protected as wellsprings of liability under section 425.16(e), those statements are not the source of the potential liability-producing conduct here, but merely evidence of it. *Santa Monica Rent Control Board v. Pearl Street, LLC*, 109 Cal.App.4th 1308 (2003), involved a somewhat analogous situation that demonstrates the fallacy of Defendants' position. There, a landlord commenced statutory procedures to increase the rents on his rent-controlled apartments following the earlier withdrawal of those units from the rental market. *See id.* at 1313-14. The local rent control board sued the landlord for violating the rent control ordinance. *See id.* at 1314-15. Even though the board's lawsuit was triggered by the landlord's petitioning activity seeking the rent adjustments, the suit was not subject to an anti-SLAPP motion because it was not based on the landlord's petitioning activity, but instead on his charging illegal rent. *See id.* at 1317-18; *see also Gallimore v. State Farm Fire & Casualty Ins. Co.*, 102 Cal.App.4th 1388, 1399-1400 (2002) (noting distinction between wrongful acts and evidence plaintiff might use to prove alleged misconduct even if such evidence might itself consist of statements protected under section 425.16); Weil & Brown § 7:236.2, at 7-100.

That is the case here. Although Plaintiffs' lawsuit may have followed from Defendants' statements in various public fora, the action is not based on those statements, but on the discriminatory housing plan they evidence and reflect. To rule otherwise would permit defendants to avoid liability for impending discriminatory housing practices by ensuring that the only mention they ever make of their plan takes place in the context of some public forum or hearing. It would likewise compel the conclusion that discriminatory housing acts are protected by a person's right of petition or free speech. *See Santa Monica*

*Rent Control*, 109 Cal.App.4th at 1318 ("Not surprisingly, defendants have not presented any authority for the proposition that their conduct in charging illegal rent is an act in furtherance of their rights of petition or free speech."); *Gallimore*, 102 Cal.App.4th at 1399 ("The allegations that State Farm engaged in claims handling misconduct do not charge an act that State Farm could or would argue was done by it 'in furtherance of' its petition or free speech rights."). This cannot be the law.

Similarly, it cannot be argued that this action arises out of Defendants' engaging in their constitutional right of petition through the use of the Ellis Act eviction process. Plaintiffs are not suing Defendants simply because of Defendants' employment of the Ellis Act procedures. Had they done so, there is little question that Defendants would advance past at least the first step of analysis under CCP section 425.16. Instead, Plaintiffs are suing Defendants for their discriminatory housing plan -- a plan that, according to Plaintiffs, was in existence well before (and, according to Defendants, abandoned well before) Defendants' utilization of any eviction procedures. Defendants' use of the Ellis Act process was merely a step in furtherance of that allegedly unlawful plan. While that step may have "triggered" Plaintiffs' lawsuit, California law is clear that this "trigger" effect is not equivalent to the question of whether a lawsuit is based on, caused by, or arises out of, protected activity.

Because this Court concludes that Plaintiffs' causes of action do not arise from any acts of the Defendants in furtherance of a protected activity, Defendants' anti-SLAPP motion is denied.

### Motion 2

In ruling on a motion to dismiss, the Court must accept as true all material factual allegations in the complaint and must construe them in the light most favorable to the plaintiff. *See Newman v. Sathyavaglswaran*, 287 F.3d 786, 788 (9th Cir.), *cert. denied sub nom. Sathyavaglswaran v. Newman*, 537 U.S. 1029 (2002); *see also Bell Atlantic Corp v. Twombly*, 127 S.Ct. 1955, 1968-69 (2007) (criticizing former standard element regarding determination as to whether plaintiff could prove any set of facts to support a claim meriting relief as the product of a phrase "best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint"); *Gorski v. Troy*,

929 F.2d 1183, 1185 (7th Cir. 1991) (assuming truth of alleged reason behind eviction); Schwarzer, Tashima, et al., California Practice Guide: Federal Civil Procedure. Before Trial ("Schwarzer & Tashima") (2007) § 9:187, at 9-53. "The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.) (internal citations omitted), *amended on other grounds on denial of rehearing by*, 275 F.3d 1187 (9th Cir. 2001). Nevertheless, the Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated on other grounds by Bell Atlantic*, 127 S.Ct. 1955, 1968-69.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). *See Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1482 (9th Cir. 1991). Thus, "[g]enerally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint." *Marder v. Lopez*, 450 F.3d 445, 448 (2006).

Dismissal is proper if the plaintiff fails to assert a cognizable legal theory or to allege sufficient facts under a cognizable legal theory, *see Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990), or if the complaint is too vague, conclusory or general, *see N. Star Int'l v Ariz. Corp. Comm'n*, 720 F.2d 578, 583 (9th Cir. 1983). "If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Leave to amend should be granted even if the plaintiff did not request leave, unless it is clear that the complaint cannot be cured by the allegation of different facts. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

As an initial matter, it is worth noting that the parties here have paid little to no heed to the rule that ordinarily matters outside the Complaint are not considered on a motion to dismiss under FRCP 12(b)(6). With that in mind, Defendants' arguments are discussed as follows.

### Standing – FHA and FEHA

Defendants first argue that Plaintiffs lack standing to assert either their FHA or FEHA claims because they have not (yet) suffered any discriminatory acts. This is plainly incorrect, at least with respect to Plaintiffs' FHA claim (and their claim under 42 U.S.C. § 1982). *See, e.g., Woods-Drake v. Lundy*, 667 F.2d 1198, 1201 (5th Cir. 1982) (landlord's threatened eviction of plaintiffs if they continued to have black guests violated FHA and section 1982). That statute provides that "aggrieved persons" may sue and includes within the definition of "aggrieved person" any "person who ..believes that such person <u>will be</u> injured by a discriminatory housing practice that is <u>about to occur</u>." *See* 42 U.S.C. §§ 3613(a)(1)(A), 3602(i) (emphasis added); *see also United States v. Hays*, 515 U.S. 737, 742-43 (1995) (Article III standing[3] considerations require, among other things, that an injury be actual or imminent, not conjectural or hypothetical). Thus, the threat of injury is sufficient for standing purposes, as a matter of either statutory interpretation or Article III considerations. *Cf. Gorski*, 929 F.2d at 1189-90 (7th Cir. 1991) (plaintiffs who sought to become foster parents had standing to pursue FHA claim where they sought permission from landlord to have children live in their apartment, landlord refused and subsequently served notice to vacate)[4]; *see also* Friedman & Garcia (2006) § 2:614.13, at 2C-78. *But see Hall v. Lowder Realty Co., Inc*, 160 F.Supp.2d 1299, 1326 (M.D. Ala. 2001) (inexplicably concluding as follows: "Had Hall sued because she feared that defendants were about to cancel her real-

---

[3] Congress eliminated the prudential barriers to confer standing in suits brought pursuant to the FHA to the fullest extent possible by Article III. *See Havens Realty Corp v Coleman*, 455 U.S. 363, 372 (1982)

[4] Specifically, the *Gorski* court ruled as follows
> Moreover, by informing the Gorskis of their discriminatory policy and of their intention to enforce it, the Troys made it clear that, should the Gorskis bring a child into their home (at which time, as we have already discussed, they clearly would be protected by the "familial status" clause of the Act), they would not be allowed to remain in their apartment. At that point, it can be argued that the Troys effectively and intentionally excluded children from the dwelling. At the very least, such activity provides the Gorskis with standing as persons who "believe[ ] that such person will be injured by a discriminatory housing practice that is about to occur " 42 U S C § 3602(i)(2)

*Gorski*, 929 F.2d at 1190

estate license, she could have been an 'aggrieved person' under the quoted provision. However, the court sees no indication in the statute that Congress intended to make threats that are not carried through actionable."). FEHA likewise defines "aggrieved person" as a "person who claims to have been injured by a discriminatory housing practice or believes that the person <u>will be</u> injured by a discriminatory housing practice that is <u>about to occur</u>." Govt. Code § 12927(g) (emphasis added); *see also* Govt. Code § 12989.2(a) ("In a civil action brought under Section 12989 or 12989.1, if the court finds that a discriminatory housing practice has occurred or is about to occur, the court may...grant [relief] as it deems appropriate to prevent any defendant from engaging in...an unlawful practice."); *Housing Rights Center v Moskowitz*, 2004 U.S. Dist. LEXIS 28885, at *7 (C.D. Cal. Sept. 20, 2004) ("Generally, California explicitly prohibits its fair housing laws from being construed to provide fewer rights or remedies than the FHA and its implementing regulations.") (quoting *Inland Mediation Bd v. City of Pomona*, 158 F.Supp.2d 1120, 1150 (C.D. Cal. 2001)).

Defendants also make the related argument that Plaintiffs have not alleged any potentially discriminatory acts sufficient to give rise to violations of the FHA, FEHA or Civil Rights Act of 1866, because Defendants' Ellis Act eviction process is non-discriminatory. Even if the Court could consider (which it cannot on a 12(b)(6) motion) the fact that Or Khaim amended its bylaws, Plaintiffs have plainly plead that Defendants' plan is discriminatory and would violate at least 42 U.S.C. § 3604(a) and (c), in addition to California Government Code section 12955(a), (c) and (k)[5] (under the meaning of "discrimination" as set forth in Government Code section 12927(c)(1)(a), (b), (d) and (g)). *Cf. Abstract Inv. Co. v. Hutchinson*, 204 Cal.App.2d 242 (1962) (tenant could raise affirmative defense in unlawful detainer proceeding that tenancy was being terminated solely because he was black); 12 Witkin, Summary of California Law, Real Property § 682, at 797-98. In any event, the Ninth Circuit has indicated that FHA claims "are to be judged under a very liberal standing requirement," and thus a plaintiff need not even allege that he or she was a victim of discrimination. *See Harris v. Itzhaki*, 183 F.3d 1043, 1049-50 (9th Cir. 1999) (citing, among other cases, *Gladstone Realtors v Village of Bellwood*, 441 U.S. 91, 115 (1979) and *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 212 (1972)).

---

[5] Plaintiffs have not alleged a violation of subdivision (k)  They have alleged violations of subdivisions (a), (c), (d), (f), (m) and (p)

### Standing – Unruh Civil Rights Act

Defendants raise a similar standing argument with respect to Plaintiffs' claim pursuant to the Unruh Civil Rights Act. Plaintiffs do not address Defendants' standing argument with respect to this claim. The issue of whether a threatened or anticipated discriminatory housing act is sufficient to permit standing under the Unruh Civil Rights Act (as opposed to the FHA and FEHA, which clearly permit such actions) does not appear to have been directly decided by any court.

In pertinent part, the Unruh Civil Rights Act provides as follows, at California Civil Code sections 51(b) and (c) and 51.5(a):

> [51(b)] All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.
>
> [51(c)] This section shall not be construed to confer any right or privilege on a person that is conditioned or limited by law or that is applicable alike to persons of every sex, color, race, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation.
>
> [51.5(a)] No business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, or refuse to buy from, contract with, sell to, or trade with any person in this state on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51…because the person is perceived to have one or more of those characteristics, or because the person is associated with a person who has, or is perceived to have, any of those characteristics.

Similar to the FHA and FEHA, the Unruh Civil Rights Act provides for civil actions by "persons aggrieved." *See* Civil Code § 52(c); 8 Witkin, <u>Summary of California Law, Constitutional Law</u> § 914, at 404. Defendants cite *Midpeninsula Citizens for Fair Housing v. Westwood Investors*, 221 Cal.App.3d 1377 (1990), for the proposition that "persons aggrieved" includes only "those individuals actually denied full and equal treatment by a business establishment." *Id.* at 1383. Indeed, that case stands for the proposition that the term cannot be interpreted so broadly as to confer standing upon plaintiffs whose civil rights have not been personally violated. *See id.* at 1384; *see also Sisemore v. Master Fin., Inc.*, 151 Cal.App.4th 1386, 1424-26 (2007) (citing *Midpeninsula* and noting that the FHA is a "very different statute…in which Congress intended to confer broad standing to sue," in

contrast to Unruh Civil Rights Act, in connection with question as to whether fair housing organization had standing to sue).

*Midpeninsula* differs from this case in material respects, however. Unlike that case, this case does not involve an issue of standing with respect to an organizational plaintiff, but instead individual plaintiffs who face the threat of a discriminatory housing act. In fact, in reaching its conclusion that the organization plaintiff in that action lacked standing, the *Midpeninsula* court commented that "[t]he courts have acknowledged that a cause of action under the Unruh Act is of an 'individual nature'...and that 'the rights protected by the Act are enjoyed by all persons, as individuals." 221 Cal.App.3d at 1383. Thus, the question here is not whether the proposed plaintiff has been "denied full and equal treatment" but whether a threatened, but not yet realized, discriminatory act, suffices. In that vein, California courts instruct that the Unruh Civil Rights Act is to be given a liberal, not a strict, construction with a view to effect its object and to promote justice. *See Winchell v. English*, 62 Cal.App.3d 125, 128-29 (1976); *Aikins v. St Helena Hosp.*, 843 F.Supp. 1329, 1339 (N.D. Cal. 1994). The legislative object in enacting the Unruh Civil Rights Act was to prohibit "intentional" discrimination in access to public accommodations. *See Harris v. Capital Growth Investors XIV*, 52 Cal.3d 1142, 1149 (1991). Defendants have not presented the Court with any authority for the proposition that a threatened discriminatory act such as that involved here is insufficient to confer standing under the Unruh Civil Rights Act. Although the *Midpeninsula* court noted that "[t]he [United States] Supreme Court's interpretation of a federal statute's standing requirements does not determine the scope of standing provided by a California statute," 221 Cal.App.3d at 1385, as noted above the lesson learned from *Midpeninsula* does not apply to the facts of this case.[6]

---

[6] In fact, although it is somewhat unclear exactly what the court meant, *Midpeninsula* can be read as supporting standing for Plaintiffs "The class of plaintiffs affected by the occupancy policy at the Westwood consisted of prospective tenants with large families who would be disqualified from renting apartments. Assuming that the policy operated in a discriminatory manner in violation of the Act, [the organizational plaintiff] was not one of those suffering from the unfair treatment." 221 Cal App.3d at 1386 The *Midpeninsula* court denied the organization's argument for representational standing because the entity "did not demonstrate at trial that any particular member or members of its organization desired to live at the Westwood and would therefore suffer injury by being denied housing there. Nor did it bring forward any particular client who had been refused housing at The Westwood." *Id* at 1387

FEHA – Exhaustion of Administrative Remedies

Defendants argue that Plaintiffs have not alleged that they have exhausted their administrative remedies with respect to this claim or received a right-to-sue letter. Plaintiffs contend that exhaustion is not required under FEHA in the context of housing discrimination, as compared to employment discrimination under that statute, citing Government Code sections 12980(a) and 12989.1. Indeed, "[a]n aggrieved person may commence a civil action whether or not a complaint has been filed under this part and without regard to the status of any complaint." Cal. Govt. Code § 12989.1; *see also* Cal. Govt. Code § 12980(a) (permitting, but not appearing to require, filing of complaint with the Department of Fair Employment and Housing); *Wood v. Vista Manor Nursing Ctr.*, 2006 U.S. Dist. LEXIS 76146, *14-15 (N.D. Cal. Oct. 5, 2006) (rejecting exhaustion argument in housing discrimination case, distinguishing employment discrimination and citing Govt. Code section 12989.1); 8 Witkin, Summary of California Law, Constitutional Law § 955, at 488 ("An aggrieved person [in a situation involving housing discrimination] may bring a civil action whether or not a complaint has been filed.").

Unruh – Religious Organization

Defendants argue that Or Khaim may not be sued for violation of the Unruh Civil Rights Act because it is a religious organization and not a business establishment. *See generally* 8 Witkin, Summary of California Law, Constitutional Law §§ 899-904, at 377-386. However, the phrase "business establishment" is to be interpreted "in the broadest sense reasonably possible." *Isbister v Boys' Club of Santa Cruz, Inc.*, 40 Cal.3d 72, 78 (1985); *see also* 8 Witkin, Summary of California Law, Constitutional Law § 898, at 376. Apartment complexes are business establishments within the meaning of the Unruh Civil Rights Act. *See Flowers v. John Burnham & Co.*, 21 Cal.App.3d 700, 703 (1971); *see also* 8 Witkin, Summary of California Law, Constitutional Law § 899, at 377. Ultimately, however, whether or not Defendants are correct on the law, Plaintiffs' Complaint clearly alleges that Or Khaim is not, in fact, a valid religious organization.[7] If Or Khaim can demonstrate at a

---

[7] For similar reasons, Defendants cannot prevail at this stage on their argument that liability under the Unruh Act would threaten rights to private and expressive association.

later date that it does so qualify, it may perhaps prevail on this argument in a summary judgment motion.

### Unfair Business Practices

Defendants simply argue that Plaintiffs have alleged no facts giving rise to an unfair business practices claim because Defendants' statements and acts have been pursuant to their free speech and petition rights and in full compliance with the Ellis Act. To the contrary, Plaintiffs allege that Defendants are engaged in discriminatory housing practices, which is obviously sufficient to state an unfair business practices claim. *See Goldman v. Standard Ins. Co.*, 341 F.3d 1023, 1036 (9th Cir. 2003) ("By proscribing any unlawful business practice, § 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.") (quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel Co.*, 20 Cal.4th 163, 180 (1999)); *Housing Rights*, 2004 U.S. Dist. LEXIS 28885, at *18.

### Negligence

Defendants allege that Plaintiffs have failed to allege duty, breach and causation. Plaintiffs contend that they have sufficiently alleged that Defendants had a duty not to discriminate or otherwise disrupt Plaintiffs' rights to enjoy their tenancies, that they breached those duties by way of the discriminatory Ellis Act eviction notices (among other measures) and that the Plaintiffs suffered harm by way of distress, physical maladies and financial expenses. Plaintiffs are correct. *See* Complaint ¶¶ 25, 37-38. Defendants do not contend that they had no such duty as a matter of law. *See Vance v. Bakas*, 2006 U.S. Dist. LEXIS 11183, *16-17 (N.D. Cal. Mar. 1, 2006) (denying motion to dismiss where plaintiffs alleged defendants had duty, under FEHA and the Unruh Civil Rights Act, not to discriminate); *Ackermann v. Carlson Indus.*, LLC, 2003 U.S. Dist. LEXIS 27008, at *9 (C.D. Cal. Nov. 13, 2003) (denying motion to dismiss negligence claim in housing discrimination case); *see also Castaneda v. Olsher*, 2007 Cal. LEXIS 8067, at *10-11 (Cal. July 30, 2007) (describing factors to consider in assessing existence and scope of duty). In their Reply, Defendants instead change tactics and simply argue that Plaintiffs' negligence and quiet enjoyment claims fail to the extent that their discrimination claims fail. As the discrimination claims are not flawed, at least as stated in the Complaint, this changed argument cannot succeed.

Breach of the Covenant of Quiet Enjoyment

In support of their claim for breach of the covenant of quiet enjoyment, Plaintiffs cite California Civil Code section 1927. That section provides that "[a]n agreement to let upon hire binds the letter to secure to the hirer the quiet possession of the thing hired during the term of the hiring, against all persons lawfully claiming the same." Under the covenant of quiet enjoyment, a landlord is bound to refrain from action which interrupts a tenant's beneficial enjoyment. *See Guntert v. City of Stockton*, 55 Cal.App.3d 131, 138 (1976). In the absence of language to the contrary, every lease contains such a covenant. *See Andrews v. Mobile Aire Estates*, 125 Cal.App.4th 578, 588 (2005). The covenant may be violated by, among other things, an arbitrary and unreasonable notice of termination of a lease. *See Guntert*, 55 Cal.App.3d at 139.

Defendants argue that their acts as alleged in this case were permitted by the Ellis Act and therefore were insufficient to form the basis for a claimed breach of quiet enjoyment. However, Plaintiffs have alleged discriminatory housing practices, thereby negating Defendants' attempt to rest on the validity of the Ellis Act notices.

Nevertheless, to be actionable as a breach of the covenant of quiet possession or quiet enjoyment, a landlord's act or omission must substantially interfere with a tenant's right to use and enjoy the premises for the purposes contemplated by the tenancy. *See Andrews*, 125 Cal.App.4th at 589; Friedman & Garcia (2005) § 4.8, at 4-5. This is an outgrowth of the original rule, under California law, that the covenant of "quiet possession" is not breached until there is an actual or constructive eviction. *See Standard Live Stock Co. v. Pentz*, 204 Cal. 618, 625 (1928) ("The law is too well settled to require extensive comment or citation of authority that the covenant of quiet possession in a lease is not breached until there has been an actual or constructive eviction."); *see also* Friedman & Garcia (2005) § 4:21, at 4-9; 7 Miller & Starr, California Real Estate (3d ed.) § 19:156; *id.* § 19:159. Here, Plaintiffs are still in possession of the premises and have not sufficiently alleged constructive eviction or any other acts which, at this point, have substantially interfered with Plaintiffs' right to use and enjoy the premises for the purposes contemplated by their tenancies. *But see Guntert*, 55 Cal.App.3d at 139 (criticizing *Standard Live Stock* and ruling that invalid notice of

termination directly caused unanticipated "wind-down" of plaintiff's business sufficient for damages claim); Friedman & Garcia (2005) § 4:12, at 4-7.

Bane Act

Plaintiffs also assert liability based upon the Tom Bane Civil Rights Act, California Civil Code section 52.1. *See generally* 8 Witkin, Summary of California Law, Constitutional Law § 895, at 368. That section permits civil actions for injunctive and other appropriate relief by, among others, individuals whose legal rights have been interfered with by threats, intimidation or coercion. *See* Calif. Civ. Code § 52.1(a). Thus, Defendants correctly argue that Plaintiffs' Bane Act claim must include allegations of threat, intimidation or coercion beyond speech alone (unless that speech threatens violence with apparent ability to carry out that threat). *See* Civil Code § 52.1(a), (b), (j); *City & County of San Francisco v. Ballard*, 136 Cal.App.4th 381, 408 (2006) (Bane Act requires an attempted or completed act of interference with a legal right, accompanied by a form of coercion).[8]

Plaintiffs have alleged the discriminatory (and thus improper) use of Ellis Act eviction notices. The parties have not cited any applicable case law. At least two cases could be considered at least somewhat analogous. *See Harper ex rel. Harper v. Poway Unified Sch. Dist.*, 345 F.Supp.2d 1096 (S.D. Cal. 2004) (threatened expulsion, suspension and/or other discipline, in conjunction with intimidation and coercive tactics, of high school student, sufficient to state Bane Act claim), *aff'd*, 445 F.3d 1166 (9th Cir. 2006), *cert. granted and judgment vacated by*, 127 S.Ct. 1484 (2007); *Ballard*, 136 Cal.App.4th 381 (city and county's pursuit of nuisance action against property owner seeking to enforce fire prevention regulations not proper Bane Act claim where property owner failed to demonstrate enforcement attempts reflected threat of violence or coercion); *see also Savage v. City of Berkeley*, 2007 U.S. Dist. LEXIS 20908, *34 (N.D. Cal. Mar. 23, 2007) (discussing violence and threats of violence in eviction-related case – without relying on or referencing the eviction procedure itself – in process of denying defendants' summary judgment motion). Because *Harper* included intimidation and coercive tactics, *Ballard* (and, by negative

---

[8] Although ordinarily an allegation of discriminatory animus or intent is not necessary to state a Bane Act claim, *see O'Toole v Superior Court*, 140 Cal.App.4th 488, 502 (2006), here the discriminatory intent is the only basis for concluding that Defendants' alleged acts threatened to violate Plaintiffs' legal rights

implication, *Savage*) more persuasively suggest that the Ellis Act notices at issue in this case do not suffice to demonstrate threats, intimidation or coercion (and words alone will not suffice). In addition, *Harper* is no longer good law, the Supreme Court having granted certiorari and vacated the judgment. *See* 127 S.Ct. 1484 (2007).

### Separation of Church and State

In what can most leniently be described as a throw-away argument, Defendants claim that the doctrine of separation of church and state bars review of their housing practices. At the very least, this argument is premature, especially where Plaintiffs contend that Or Khaim is not a valid religious organization. In addition, Defendants have completely failed to demonstrate that Or Khaim's housing practices are a "matter of church government as well as those of faith and doctrine." Moreover, at least Plaintiffs' FHA and FEHA claims are not barred simply because there are alleged against what might - in the future - be determined to be a religious organization.

### Conclusion

For the reasons stated above, Defendants' Motion to Dismiss is denied except as to causes of action (6) violation of the implied covenant of quiet enjoyment, Cal. Civ. Code § 1927, and (8) violation of the Bane Act, Cal. Civ. Code §52.1, where the motion is granted with leave to amend.